FILED

2017 Feb-23  AM 09:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | | |
|---|---|---|
| ALFREDA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  3:15-cv-00857-SGC |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Alfreda Brown, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her a period of disability, disability insurance benefits ("DIB"), and social security income benefits ("SSIB").  (Doc. 1).  Ms. Brown timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons that follow, the decision of the Commissioner will be affirmed.

## I.    FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Ms. Brown was born on June 16, 1961, and has two years of college education.  (R. 187, 238).  Ms. Brown's past relevant work experience includes employment as an administrative assistant; receptionist; construction project coordinator; and crisis line/security agent.  (R. 238).  Ms. Brown claims she became disabled on November 5, 2011, due to multiple sclerosis.  (R. 49).

Ms. Brown filed for DIB and SSI benefits on May 16, 2012.  (R. 187-88, 194-98).  The Administrative Law Judge ("ALJ") denied Ms. Brown's request for benefits on February 28,

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 9).

2014.  (R. 7-23).  The Appeals Council denied review of the ALJ's decision, and Ms. Brown timely appealed to this court.  (R. 1-3).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is performing substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops.  *Id.*  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet durational requirements before a claimant will be found disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments fall within this category, the claimant will be found disabled without further consideration.  *Id.*  If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation

stops.  *Id.*  If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, he or she is not disabled.  *Id.*

Applying the sequential evaluation process here, the ALJ found Ms. Brown had not engaged in substantial gainful activity since her alleged onset of disability.  (R. 12).  At step two, the ALJ found Ms. Brown suffered from the severe impairments of multiple sclerosis ("MS") and hypertension.  (*Id.*).  The ALJ also classified Ms. Brown's degenerative disc disease and anxiety as non-severe.  (R. 17).

At step three, the ALJ found Ms. Brown did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments.  (R. 19).  Before proceeding to step four, the ALJ determined Ms. Brown had the RFC to perform sedentary work, except that she should avoid extremely hot temperatures and unprotected heights.  (R. 19).  In determining the RFC, the ALJ considered Ms. Brown's symptoms and activities, the medical record, and opinion evidence.  (R. 19-22). Regarding opinion evidence, the ALJ assigned little weight to the opinion of Dr. Christopher LaGanke—Ms. Brown's treating physician—which imposed more severe limitations on Ms. Brown.  (R. 21).  The ALJ found Dr. LaGanke's opinion was contradicted by his own medical records, the opinion of medical consultant Dr. Albert Heck, objective medical evidence of record, and Ms. Brown's activities, as reported by her mother.  (R. 21-22).  The ALJ concluded that, while the medically determinable impairments could reasonably be expected to cause Ms. Brown's symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.  (R. 20).

At step four, the ALJ determined Ms. Brown was capable of performing her past relevant work as an administrative consultant, receptionist, and social services provider.  (R. 22).  In reaching this conclusion, the ALJ relied on the testimony of the vocational expert.  (R. 23).  Accordingly, the ALJ concluded his findings by stating Ms. Brown "has not been under a disability, as defined in the Social Security Act, from November 5, 2011, through the date of this decision."  (R. 23).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof

preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    DISCUSSION

Ms. Brown contends the ALJ's decision is not supported by substantial evidence.  (Doc. 14 at 1).  Specifically, Ms. Brown argues the ALJ failed to properly evaluate Dr. LaGanke's opinion and the medical records from which the opinion was drawn.  (*Id.* at 6). Ms. Brown also contends the ALJ erred by adopting a portion of Dr. LaGanke's opinion while rejecting the balance.  (*Id.* at 7).

The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).  The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence.  *Marbury v. Sullivan,* 957 F.2d 837, 841 (11th Cir. 1992).  The Eleventh Circuit has found good cause to afford less weight to the opinion of a treating physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillip,* 357 F.3d at 1240-41.

5

The ALJ must clearly articulate the reasons for rejecting the treating physician's opinion.  *Id.* at 1241.  Additionally, a treating physician's opinion is usually given more weight than an opinion from a non-treating physician.  *Fleming v. Commissioner, Social Sec. Admin.*, 550 F. App'x 738, 739 (11th Cir. 2013) (citing *Lewis*, 125 F.3d at 1440).

While physicians' opinions about a claimant's abilities and restrictions constitute relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p.  Opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(d), 416.927(d); *see Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  The court considers a doctor's evaluations of a plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition."  *Lewis*, 125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative of the claimant's RFC.  *See, e.g.*, 20 C.F.R. § 404.1546(c).

At issue here is an opinion contained on a form Dr. LaGanke completed on June 24, 2013.  (R. 442).  In response to questions about various limitations caused by MS, Dr. LaGanke stated Ms. Brown: (1) would be "unable to stand for an extended period of time or walk long distances;" (2) would be "limited for sitting long periods of time due to the neuropathy of her lower extremities;" (3) suffered from a significant decrease in hand and arm strength; (4)  would have difficulty performing "many activities outside her home" due to extreme fatigue; and (5) would be limited in her daily functions due to intolerance to extreme hot and cold temperatures.

(*Id.*).  In response to a question regarding whether Ms. Brown's condition would prevent her from engaging in substantial gainful activity, Dr. LaGanke checked a box marked "yes."  (*Id.*). The ALJ afforded little weight to this opinion, finding it was inconsistent with the Dr. LaGanke's own records and was contradicted by Dr. Heck's opinion.  (R. 21).

First, the ALJ found that records from Dr. LaGanke's "physical examinations have revealed moderate abnormalities at best."  (R. 21).  This conclusion was based on "slight abnormalities" in strength and "mild to moderate decrease in vibration in her knees."  (*Id.*). Regarding fatigue, the ALJ noted that repeated treatment notes reported she was "alert and oriented."  (*Id.*).  Review of Dr. LaGanke's treatment notes, spanning nearly four years, confirms the ALJ's interpretations.  (R. 368, 382, 387, 390, 392, 396, 412, 415, 417, 420, 423, 427, 448). (all noting tone was "[n]ormal in all four extremities" and that Ms. Brown was alert and oriented; most noting strength bulk was "[n]ormal in all four extremities of detailed testing," with slightly diminished strength in certain areas during four examinations).   Because Dr. LaGanke's treatment notes are inconsistent with his opinion regarding Ms. Brown's limitations, substantial evidence supports the ALJ's decision to assign little weight to the opinion.

Next, the ALJ found the opinion of Dr. Heck, a medical consultant, to be consistent with the record, including Dr. LaGanke's treatment notes.  (R. 21-22).  Dr. Heck opined Ms. Brown could: (1) occasionally lift and carry twenty pounds; (2) frequently lift and carry ten pounds; (3) sit, stand and/or walk for six hours during an eight-hour workday; (4) frequently climb ramps or stairs; (5) never climb ladders, ropes, or scaffolds; and (5) frequently balance, stoop, kneel, crouch, and crawl.  (R. 17).  Dr. Heck also found Ms. Brown should avoid unsecured areas and

exposure to extreme heat.  (*Id.*).  The ALJ gave significant weight to Dr. Heck's opinion, noting it was consistent with the objective medical evidence.[2]

In addition to the medical opinion evidence discussed above, the ALJ considered the third party function report completed by Ms. Brown's mother, with whom she lives.  (R. 22; *see* R. 257-64).  The report noted Ms. Brown: (1) experiences no problem maintaining personal care; (2) did not need reminders to take care of her personal needs or to take medications; (3) was able to travel outside the home by herself; (4) could drive a car; (5) sings at her church; (6) could pay attention for as long as necessary to complete a task; (7) is able to follow written and spoken instructions well; and (8) could adjust well to changes in routine.  (R. 258-263).  The report did not identify any tasks Ms. Brown could no longer perform as a result of her alleged disability. (R. 258). The ALJ afforded significant weight to the opinion of Ms. Brown's mother, which is permissible under the regulations.  *See* 20 C.F.R. § 404.1513(d).

To the extent Ms. Brown may rely on Dr. LaGanke's affirmative answer that she would be unable to perform substantial gainful activity, the opinion is not determinative of Ms. Brown's RFC.   Indeed, this determination is the Commissioner's alone.   20 C.F.R.  §§ 404.1527(e), 416.927(d); *see Bell*, 796 F.2d at 1353-54.   For the foregoing reasons, substantial evidence supports the ALJ's treatment of Dr. LaGanke's opinion.

Finally, Ms. Brown contends the ALJ erred by partially adopting and partially rejecting Dr. LaGanke's opinion.  This assertion is based on the ALJ's RFC determination, which found Ms. Brown should avoid extreme heat.  Ms. Brown argues this constitutes a partial adoption of Dr. LaGanke's opinion that she should avoid exposure to extreme heat and cold.  (Doc. 14 at 7).

---

[2] State agency consultants are considered experts in Social Security disability programs, and when supported by the record, their opinions may be entitled to great weight.  20 C.F.R. § 404.1527(f)(2); SSR 96-6p.

This contention is without merit, even setting aside the ALJ's explicit statement that little weight was given to Dr. LaGanke's opinion.  As noted above, Dr. Heck opined—and the ALJ assigned significant weight to the opinion—that Ms. Brown should avoid even moderate exposure to extreme heat.  (R. 405).  By way of explanation, Dr. Heck stated: "Excessive heat may aggravate symptoms and deficits in multiple sclerosis."  (*Id.*).  Additionally, the ALJ's RFC determination is in line with Dr. Heck's opinion in that it recommends avoidance of extreme heat only, unlike Dr. LaGanke's opinion that Ms. Brown should avoid both extreme heat and cold.

For all of the foregoing reasons, substantial evidence supports the ALJ's decision regarding Dr. LaGanke's opinion.

## IV.     CONCLUSION

Upon review of the administrative record, and considering all of Ms. Brown's arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law.  Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 23rd day of February, 2017.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

9